**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| JERALD BOITNOTT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | |
| BED BATH & BEYOND, INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Jerald Boitnott ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Bed Bath & Beyond, Inc. ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (the "ADA") and its implementing regulations, for declaratory and injunctive relief, attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 12181 *et seq.* (the "ADA") and its implementing regulations.

## INTRODUCTION

1.     Defendant's position a host of obstructions, including merchandise displays, stocking carts, bins, dollies, and ladders so that they block or narrow the aisle pathways of its stores.

2.     This practice is a well-established marketing ploy, driven by a calculated judgment that impeding interior paths of travel increases sales revenue and profits. See e.g., *Stuff Piled in the Aisle? It's There to Get You to Spend More*, The New York Times, (April

7, 2011)[1] See also e.g., *Why a Messy, Cluttered Store is Good for Business*, Time Magazine, (April 8, 2011).[2]

3.      Although this practice may increase profits, it does so at the expense of basic civil rights guaranteed to people with disabilities by the ADA because it results in unlawful access barriers.

4.       Plaintiff Boitnott, at all times relevant hereto, has suffered from a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). He is therefore a member of the protected class under the ADA and the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et. seq*.

5.      Plaintiff has visited Defendant's stores and has repeatedly been denied full and equal access to the stores as a result of accessibility barriers existing in interior paths of travel. These access barriers include but are not limited to: merchandise displays, bins, dollies, and ladders, positioned so that they impermissibly block or narrow the aisle pathways. These conditions violate the ADA and severely impede Plaintiff's ability to access the goods and services offered at Defendant's stores.

6.      The access barriers described herein are not temporary and isolated. They are systemic, recurring, and reflective of Defendant's marketing and store policies and practices.  Plaintiff has encountered the same barriers on multiple occasions and has been repeatedly deterred from accessing Defendant's goods and services as a result.

---

[1] Available at https://www.nytimes.com/2011/04/08/business/08clutter.html as of March 7, 2019.

[2] Available at http://business.time.com/2011/04/08/why-a-messy-cluttered-store-is-good-for-business/ as of March 7, 2019.

7.     Counsel for Plaintiff have overseen an investigation into Defendant's Minnesota stores which has confirmed the widespread existence of interior access barriers that are the same as, or similar to, the barriers directly experienced by Plaintiff.

8.     Unless Defendant is required to remove the access barriers described herein, and required to change its policies and practices so that these access barriers do not reoccur at Defendant's stores, Plaintiff and the proposed Class will continue to be denied full and equal access to the stores and will be deterred from fully using Defendant's stores.

9.     In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a) Defendant remediate all interior path of travel access barriers at Defendant's Minnesota and other stores, consistent with the ADA;

b) Defendant change its policies and practices so that the interior path of travel access barriers at Defendant's Minnesota and other stores do not reoccur; and

c) Plaintiff's representatives shall monitor Defendant's Minnesota and other stores to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

10.     Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is

3

appropriate…. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA'S CLEAR AND COMPREHENSIVE MANDATE

11.    The ADA was enacted over a quarter century ago and was intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

12.    The ADA is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

13.    The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together

with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

14.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in the goods or services offered by a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

15.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); or from affording goods, services, facilities, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); or from providing goods, services, facilities, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)).

## THE ADA AND THE RIGHT OF NON-DISCRIMINATORY ACCESS TO GOODS

16.   The ADA specifically prioritizes "measures to provide access to those areas where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables …" 28 C.F.R. § 36.304

17.   The ADA and its implementing regulations define prohibited discrimination to include the following: A)  the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv); B) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1); c) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and D) the failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

18.   To be "readily accessible" under Title III of the ADA, merchandise on fixed aisle shelving in a retail store such as Bed Bath & Beyond must be located on an accessible route. The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public

accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").  The applicable "accessible route" standards are set forth in the 2010 Standards at Section 403.5.1.  See also, ADA Guide for Small Businesses, June 1999, available at https://www.ada.gov/smbustxt.htm (noting that "when sales items are displayed or stored on shelves for selection by customers, the store must provide an accessible route to fixed shelves and displays, if doing so is readily achievable.") ADA Figure 403.5.1 explains that an accessible route must be a minimum of 36 inches, but can be reduced to 32 inches for a length of no more than 24 inches, such as at doors, so long as the 32 inch segments are at least 48 inches apart. See ADA Figure 403.5.1 available at https://www.access-board.gov/guidelines-and-standards/buildings-andsites/about-the-ada-standards/ada-standards/chapter-4-accessible-routes (last accessed on October 9, 2018).

19.    The ADA further requires places of public accommodations to design and construct facilities to be independently usable by individuals with disabilities. 42 U.S.C. § 12183(a)(1).

20.    The ADA further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

21.    The ADA further requires Defendant to provide individuals who use wheelchairs or scooters full and equal enjoyment of its facilities. 42 U.S.C. § 12182(a).

22.     When discriminatory architectural conditions exist within a public accommodation's facility, the ADA directs that a "public accommodation ***shall*** remove architectural barriers in existing facilities . . . where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(b) (emphasis added); *see also* 42 U.S.C. § 12182(b)(2)(A)(iv) (the failure to remove architectural barriers, where such removal is readily achievable, constitutes discrimination).

23.     In addition to tangible barrier removal requirements as well as physical design, construction, and alteration requirements, the ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

24.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

25.     The access barriers described herein demonstrate that Defendant's facilities are not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs or scooters and/or that Defendant's facilities are not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs or scooters.

26. Defendants repeated and systemic practices herein described constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

## JURISDICTION AND VENUE

27. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

28. Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district.

29. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

30. Plaintiff is, and at all times relevant hereto was, a resident of St. Paul, Minnesota. Plaintiff, as a result of his disability, has been prescribed a four-wheeler walker with convertible seat, a cane, and a wheelchair. Because Mr. Boitnott's condition can vary, so does his use of and reliance upon these mobility devices. Thus he may require a cane on days when he is more stable, and the four-wheeler walker with convertible seat on days when he is less stable, and a wheelchair when his condition worsens so that he cannot balance and is at risk for falling even with a four-wheeler walker. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*

31. Plaintiff is both a tester in this litigation and a consumer who wishes to access Defendant's goods and services. *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d

447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093,

1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d

1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323,

1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74

(1982).

32.     Defendant Bed Bath & Beyond, Inc., is a foreign company headquartered at

650 Liberty Avenue, Union, New Jersey.

33.     Defendant's stores are places of public accommodation pursuant to 42 U.S.C.

§12181(7).

## FACTUAL ALLEGATIONS AND PLAINTIFF'S EXPERIENCE

### I.     Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities.

34.     Plaintiff Mr. Boitnott was born in Minnesota and has resided in Saint Paul,

Minnesota for years.  He regularly frequents businesses in the Twin Cities Metropolitan

and surrounding area. The ability to independently patronize businesses is important to Mr.

Boitnott and his quality of life; it enables him to obtain necessary goods and services and

allows him to interact with the community, which is a critical social outlet for him.

35.     Plaintiff has repeatedly visited Defendant's stores including those located at

7950 Wedgewood Ln, Maple Grove, Minnesota; 7961 South Town Center, Bloomington,

Minnesota; and 8250 Tamarack Village, Woodbury, Minnesota ("the Subject Properties")

and encountered unlawful and discriminatory interior access barriers including, but not

necessarily limited to, merchandise displays, boxes, and ladders positioned so that they

block or narrow the aisle pathways in violation of the requirements of the 2010 Standards Section 403.5.1.

36.     Plaintiff's Investigator also separately examined the properties visited by Plaintiff in March of 2019 and encountered the same types of access barriers Plaintiff has repeatedly encountered, as depicted in the following photographs:



*Figure 1 Bed Bath & Beyond, Maple Grove, MN*



*Figure 2 Bed Bath & Beyond, Maple Grove, MN*



*Figure 3 Bed Bath & Beyond, Bloomington, MN*



*Figure 4 Bed Bath & Beyond, Bloomington, MN*



*Figure 5 Bed Bath & Beyond, Woodbury, MN*



*Figure 6 Bed Bath & Beyond, Woodbury, MN*

37.     As a result of Defendant's non-compliance with the ADA, Plaintiff's right to full and equal, non-discriminatory, and safe access to Defendant's goods and facilities has been denied.

38.     Plaintiff will be deterred from returning to and fully and safely accessing Defendant's facilities so long as Defendant's facilities remain non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's facilities.

39.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of his rights under the ADA.

40.    As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendant's facilities, have access barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II.    Defendant Denies Individuals With Disabilities Full and Equal Access to Its Facilities.

41.    Defendant is engaged in the ownership, management, operation, and development of retail stores throughout the United States, including, upon information and belief, approximately 1550 stores in the United States.

42.    As the owner and manager of its properties, Defendant employs centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of its facilities.

43.    However, as set forth herein, these policies, practices, and procedures are inadequate in that Defendant's facilities are operated and maintained in violation of the accessibility requirements of Title III of the ADA.

44.    On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendant throughout Minnesota, and found the following locations contain the same problematic access barriers and do not have fully accessible interior paths of travel and access to goods, in violation of Section 403.5.1 of the 2010 Standards:

a)  7950 Wedgewood Ln, Maple Grove, Minnesota;

b)  7961 South Town Center, Bloomington, Minnesota;

c)  8250 Tamarack Village, Woodbury, Minnesota

d)  2480 N Fairview Avenue, Roseville, Minnesota

e)  11240 Wayzata Blvd., Minnetonka, Minnesota

f)  1295 Promenade Pl, Eagan, Minnesota

g)  14910 Florence Trail, Apple Valley, Minnesota

h)  3959 Second Street, St. Cloud, Minnesota

45.    As evidenced by the widespread inaccessibility of Defendant's stores in Minnesota, absent a change in Defendant's corporate policies and practices, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated in the first instance.

46.    Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, access barriers in Defendant's Minnesota stores.

## CLASS ALLEGATIONS

1.    Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure individually and on behalf of the following classes:

(1) All persons with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by Defendant in Minnesota and have, or will have, experienced discriminatory access to Defendant's goods due to Defendants failure to comply with the ADA's prohibition against access barriers in interior paths of travel; and

(2) All persons with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by

Defendant in the United States and have, or will have, experienced discriminatory access to Defendant's goods due to Defendant's failure to comply with the ADA's prohibition against access barriers in interior paths of travel.

47.    Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

48.    Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

49.    Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendants failure to make its facilities fully accessible and independently usable as above described. The questions of law and fact that are common to the class include:

a.   Whether Defendant operates places of public accommodation and are subject to Title III of the ADA and its implementing regulations;

b.   Whether storing merchandise in interior aisles of the stores makes the stores inaccessible to Plaintiff and putative class members; and,

c.  Whether Defendant's storage, stocking and setup policies and practices discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations.

50.  <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

51.  Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## <u>CAUSE OF ACTION: VIOLATION OF THE ADA</u>

52.  Defendant has failed, and continue to fail, to provide individuals who use wheelchairs or scooters with full and equal enjoyment of its facilities.

53.  Defendant has discriminated against Plaintiff and the class in that Defendant has failed to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs or scooters in violation of 42 U.S.C. § 12182(a) as described above; Section 403.5.1 of the 210 Standards.

54.    Defendant's conduct is ongoing and continuous, and Plaintiff has been harmed by Defendant's conduct.

55.    Unless Defendant is restrained from continuing its ongoing and continuous course of conduct, Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

56.    Given that Defendant has not complied with the ADA's requirements to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs or scooters, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the class, prays for:

a.    A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendant's facilities are not fully accessible to and independently usable by individuals who use wheelchairs or scooters;

b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendant to take all steps necessary to remove the access barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs, scooters or other mobility devices; (ii) directs Defendant to change its policies and practices to prevent the reoccurrence of access barriers post-remediation; and (iii) directs that Plaintiff shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place.

c.    An Order certifying the classes proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.     Payment of costs of suit;

e.     Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and,

f.     The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: March 15, 2019             Respectfully submitted,

**THRONDSET MICHENFELDER, LLC**

*/s/ Patrick W. Michenfelder*
Patrick W. Michenfelder (#024207X)
Chad Throndset (#0261191X)
Cornerstone Building
One Central Avenue West, Suite 203
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
pat@throndsetlaw.com
chad@throndsetlaw.com

**CARLSON LYNCH, LLP**

R. Bruce Carlson
Kelly K. Iverson
Bryan A. Fox
1133 Penn Avenue, 5th Floor
Pittsburgh PA, 15222
(412) 322-9243 (Tel.)
bcarlson@carlsonlynch.com
kiverson@carlsonlynch.com
bfox@carlsonlynch.com
(Pro Hac Vice Application Forthcoming)

*Attorneys for Plaintiff*